it; and the court points out that the right to receive the wages was definite, or could be made so, when they were due, while the damages for the wrongful dismissal could not be ascertained exactly until the stipulated period of the service had expired. In the case at bar there were breaches of the one express contract, the lease, already committed, for the lease expired on May 1, 1908, and the first action was not brought until some months thereafter, and in Bendernagle's Case, supra, Cowen, J., says:

"I have been able to find but one case which holds that, there being several breaches of the same contract already committed, the party may bring a several action for each."

And also:

"I admit that the rule does not extend to several and distinct trespasses or other wrongs (White v. Moseley, 8 Pick. [Mass.] 356), nor, as we have seen, to distinct contracts. It goes against several actions for the same wrong, and against several actions on the same contract. All damages accruing from a single wrong, though at different times, make but one cause of action; and all debts or demands already due by the same contract make one entire cause of action. Each comes under the familiar rule that, if a party will sue and recover for a portion, he shall be barred of the residue."

In any event I think that we have an express approval of the rule in Bendernagle's Case, supra, and in Pakas v. Hollingshead, 184 N. Y. 211, at page 215, 77 N. E. 40, 41, 3 L. R. A. (N. S.) 1042, 112 Am. St. Rep. 601, where the court, per O'Brien, J., say:

"It was held in the case of Bendernagle v. Cocks, 19 Wend. 207 [32 Am. Dec. 448], that where a party had several demands or existing causes of action growing out of the same contract or resting in matter of account, which may be joined and sued for in the same action, they must be joined; and if the demands or causes of action be split up, and a suit brought for part only, and subsequently a second suit for the residue is brought, the first action may be pleaded in abatement or in bar of the second action. That, it seems to us, is what has been decided in this case. The case referred to was elaborately discussed by Judge Cowen, and the English authorities on the subject cited and distinguished."

And in Lorillard v. Clyde, 122 N. Y. 45, 25 N. E. 292, 19 Am. St. Rep. 470, Vann, J., writing for the court, cites both Bendernagle's Case, supra, as well as Jex v. Jacob, supra, among his authorities. The learned Municipal Court judge rested his decision on Kennedy v. City of New York, 127 App. Div. 89, 111 N. Y. Supp. 61, which was reversed in 196 N. Y. 19, 89 N. E. 360, without affecting the rule stated and applied in the judgment of the Appellate Division.

The judgment of the Municipal Court is affirmed, with costs. All concur.

---

In re LALLY'S WILL.

(Supreme Court, Appellate Division, Second Department.   March 4, 1910.)

1. WILLS (§ 191*)—REVOCATION—MARRIAGE AND BIRTH OF ISSUE.
  A will, providing for "such child or children of mine as may survive me," is not revoked by testator, after making it, marrying and having issue of such marriage. Decedent Estate Law (Consol. Laws, c. 13) § 35,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

only providing that this shall work a revocation "unless such issue shall be provided for in the will."

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 469–478; Dec. Dig. § 191.*]

2. PERPETUITIES (§ 4*)—TRUST ESTATES.

The will of a testator, who died leaving 10 minor children, does not violate the statute against perpetuities, by giving all his property in trust "to hold, manage, lease, let, sell or otherwise dispose of the same, and to invest and reinvest the proceeds thereof, and use and employ the income and profits therefrom for the support and education of such child or children of mine as may survive me (during their minority), and when the youngest of such children shall arrive at the age of 21 to divide and distribute the principal and any accumulated income between such children"—the trust being made to continue only during the minority of the youngest child, the suspension terminating if such child dies before reaching majority, and the words "during their minority" not qualifying the trust term, but the direction to the trustees to use and employ the income, for the support and education of the children.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 31–39; Dec. Dig. § 4;* Trusts, Cent. Dig. §§ 3, 4.]

3. WILLS (§ 446*)—CONSTRUCTIONS.

Two constructions of a will being equally permissible, one of which will destroy, and the other conserve, the latter must be adopted.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 962; Dec. Dig. § 446.*]

Appeal from Surrogate's Court, Queens County.

In the matter of the probate of the last will and testament of Thomas P. Lally, deceased. From a decree admitting to probate an instrument as such will, and adjudging that a certain trust clause therein contained, so far as it affects personal property, to be valid, Margaret Lally appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, THOMAS, RICH, and CARR, JJ.

Thomas F. Magner, for appellant.
Edwin D. Kenyon, for respondents executors and trustees.
Edward J. Connolly, special guardian for infant respondents.

CARR, J. The appeal is by the widow of the decedent, who contested the probate. The will was made before the marriage of the decedent with his wife, the contestant, and contains no provision for her. When the will was made, the testator was a widower with six living children. Some time thereafter he married the contestant, and four children were born of that union and survived the testator. At his death ten children survived him, six as issue of the first marriage, and four as issue of the second.

The will is brief in form and provides as follows:

"First: After my lawful debts are paid, I give, devise and bequeath all my property and estate of every name, character and description to my executors and trustees hereinafter named, in trust nevertheless, to hold, manage, lease, let, sell or otherwise dispose of the same, and to invest and reinvest the proceeds thereof and use and employ the income and profit therefrom for the support and education of such child or children of mine as may survive me (during their minority), and when the youngest of such children shall arrive at the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Inde..es

age of twenty-one to divide and distribute the principal and any accumulated income between such children, share and share alike."

It is claimed by the contestant that the entire will became revoked by the marriage of the testator, after it was made, and the subsequent birth of children in the new marriage. There is no merit in this objection, as under the terms of the will the children born of the new marriage are provided for by the testator as "such child or children of mine as may survive me," and, in fact, they receive greater provision under the will than they would receive should the will be deemed revoked. It appears that the testator left a very substantial personal estate, and, had he died intestate, his widow would take an absolute one-third part of this, thus reducing very materially the amount distributable among his children. Code Civ. Proc. § 2732.

This case is clearly not within the provisions of the statute which works a revocation of a will where the testator subsequently marries and leaves issue of the marriage surviving him, for the revocation takes place only "unless provision shall have been made for such issue by some settlement, or unless such issue shall be provided for in the will, or in such way mentioned therein, as to show an intention not to make such provision," etc. Decedent Estate Law, § 35 (chapter 13 of the Consolidated Laws).

As to the validity of the trust clause set forth in the will, a more substantial and most interesting question arises.

There were ten children of the testator him surviving, the youngest of whom is a daughter of Margaret Lally, aged three years, and all of whom were minors. The estate of the decedent consisted of real and personal property, all of which was devised and bequeathed to certain persons in trust for the decedent's surviving children. This trust is attacked as invalid on the ground that it suspends the power of alienation of the real property for more than two lives in being at the time of the testator's death and likewise suspends the absolute ownership of the personal property for more than two lives. Some discussion was had between the parties to this appeal as to whether the will does not work an equitable conversion of the testator's real property, and whether that, therefore, the whole estate to be held in trust should not be considered as personal property for the purpose of testing the validity of the trust. The legal questions involved in the lawfulness of the trust arise as well whether the trust estate be mixed, consisting of real and personal property, or whether it be personal property only. The question of an equitable conversion under the terms of this will is not necessary to the decision of the primary question as to the lawfulness of the trust in question, however important it might be under different circumstances. The testator has attempted to constitute one trust corpus consisting of all his estate, real and personal. If his intention could not be upheld as to the very substantial portion of his estate which consisted of personal property, his primary purpose would be so interfered with as to frustrate the entire scheme of the will and the whole trust should fail and fall.

The contestant's contention is as follows: The trust in question is made to continue during the minorities of ten living children, all of

whom are minors, and, therefore, there is as to the real estate a suspension of the power of alienation, and, as to the personal property, a suspension of ownership, for more than two lives in being at the time of decedent's death.

If this is the true effect of the trust clause, then it clearly violates the statutes against perpetuities. The rule of decision on this point is to be based upon the interpretation or construction of the provisions of this will as indicative of the testator's purpose.

As is usual whenever the question of interpretation arises, numerous authorities are cited by either side as controlling. Each and every one of them is authoritative only upon its own facts, however helpful and illustrative it may be as to the general rules applied by courts in interpreting written instruments. The well-understood primary rule is that the intention of the testator is to prevail, if it can be ascertained. In this will before us, did the testator intend to create a trust which should last during ten distinct minorities, as the appellant claims, or was the duration of the trust limited to but one minority, as the respondents answer?

The trust here in question is "to hold, manage, lease, let, sell or otherwise dispose of the same [the testator's real and personal property] and to invest and reinvest the proceeds thereof and use and employ the income and profit therefrom for the support and education of such child or children of mine as may survive me (during their minority), and when the youngest of such children shall arrive at the age of twenty-one to divide and distribute the principal and any accumulated income between such children, share and share alike."

The words "the youngest of such children" relate back to the earlier phrase "such child or children as may survive me," and in this case apply to Margaret Lally, aged three years. It is well-settled law on the question, here at issue, that the suspension of the power of alienation or right of ownership during a minority is not equivalent to a suspension for a fixed period, but amounts at most to a suspension as to but part of a life, because the law reads into such a suspension the alternative condition that the suspension shall terminate if the life chosen as the standard of duration should end before the expiration of the minority. Becker v. Becker, 13 App. Div. 342, 43 N. Y. Supp. 17; Jacoby v. Jacoby, 188 N. Y. 124, 80 N. E. 676; Coston v. Coston, 118 App. Div. 1, 103 N. Y. Supp. 307; Sawyer v. Cubby, 146 N. Y. 192, 40 N. E. 869; Van Cott v. Prentice, 104 N. Y. 45, 56, 10 N. E. 257; Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933.

If, however, it be clear that it was the intention of the testator that the suspension should continue for a period equivalent to a minority, and not be terminable by death during that period, then the rule would be otherwise. Such was the case in Hawley v. James, 16 Wend. 61, where the language of the will was, in part, as follows:

"I have also determined that this trust shall continue, and that the final division of my estate shall not take place until the youngest of my children and grandchildren, living at the date of this my will, and attaining the age of twenty-one years, shall have attained that age."

The very nature of this language makes it clear that the testator there intended a suspension based not upon a minority or a life, but on a fixed period of time, and such a suspension was held clearly unlawful.

In the case at bar, it is quite plain that no suspension is attempted beyond the majority of Margaret Lally, or her death during minority, unless it arises from the direction to the trustees to "use and employ the income," etc., "for the support and education of such child or children of mine as may survive me, during their minority."

If these words, properly constructed, prolong the duration of the trust after the majority, or the death, of the child Margaret Lally, and during the remaining nine minorities, the case at bar would present practically the same question as that decided in Whitefield v. Crisaman, 123 App. Div. 233, 108 N. Y. Supp. 110. In that case there was a trust for the benefit of four minor children, and the will directed the application of "the income and such portion of the principal as may be necessary for their maintenance to be used until all shall have reached their majority, when, after deducting the percentage legally allowed" (to the testator's wife), "the residue or balance is to be divided share and share alike among the aforementioned children," etc. In that case the duration of the trust term was clearly during four minorities, and the trust was held invalid for that reason.

If we look carefully at the clause in question in the case at bar, we shall see that, if the words "during their minority" had been entirely omitted, no question of validity could arise properly under the settled rules of construction, for the trust would end either when the child Margaret Lally became of age, or on her death before coming of age. Nor is the result changed by the use of the words in question. They constitute a qualifying clause, and what they qualify must be ascertained by an examination and comparison of the whole context. They cannot be said to qualify the duration of the trust term, for the testator has elsewhere provided specifically when the trust term should end, and in a manner inconsistent with such a qualification. To give them such effect would at once import into the trust clause an obvious contradiction. Their qualifying effect relates, not to the duration of the trust term, but to the time when the income is to be applied to the support of the children, "during their minority," i. e., during the minority of each of them while the trust is running. The trust cannot continue beyond the time when the testator has directed the estate to be divided. If that time should come while some of the children are yet minors, the duty of the trustees as to applying income ends, and all of the children, minors or otherwise, are entitled to the aliquot shares.

This construction is not forced, but, on the contrary, is obvious, according to the ordinary rules which require the whole context to be scanned to determine the meaning of any part. Even where two constructions are equally permissible, one of which would destroy, and the other of which would conserve, that construction must be adopted which would uphold the validity of the testamentary provision. Jacoby v. Jacoby, supra, at page 130 of 188 N. Y., 80 N. E. 676; Roe v. Vingut, supra.

It would seem that, on the face of this will, there can be no well-based doubt of the validity of the trust therein created, whether the corpus of the trust estate be deemed mixed, real property and personal property, or whether it be treated as personal property only by virtue of an assumed equitable conversion. The result here is no different under either hypothesis.

It is, no doubt, a regrettable circumstance that under this will the testator's widow has not been provided for as to the personal property. As to the real estate, she has her dower. Our duty in the premises is plain, however unfortunate the widow's condition may be. We are of opinion that the will was admitted to probate properly, and that the trust clause therein contained is valid.

The decree of the surrogate is affirmed, with costs and disbursements to the respondents and costs and disbursements to the special guardian who filed a brief with this court. All concur.