1. EXECUTORS AND ADMINISTRATORS ☞206(3)—CLAIMS—LIABILITY OF ESTATE —WIFE'S SERVICES TO DECEDENT.

   Where a testator directed that "whosoever" cared for him during his last illness should be paid therefor, and later married a second wife, who was not mentioned in the will, *held*, that her services during his last illness constituted a valid claim against the estate.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 733; Dec. Dig. ☞206(3).]

2. WILLS ☞191—REVOCATION—MARRIAGE.

   Under Decedent Estate Law (Consol. Laws, c. 13) § 35, a will is not revoked by the testator's subsequent marriage, unless it results in issue.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 469–478; Dec. Dig. ☞191.]

Proceeding by Olive Andrest to establish a claim for services against the estate of Jacob Andrest. Decree allowing claim.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Jeremiah Wood, of New York City, for executor.
Horton D. Wright, of Groversville, for claimant.

CALDERWOOD, S. The above-named decedent died September 24, 1914, survived by Olive Andrest, his widow, and by three sons and four daughters. It appears from the proof submitted that his first wife died April 10, 1910; that on May 6, 1910, he executed his last will and testament; and that he was married to said Olive Andrest, the claimant herein, on the 30th day of April, 1911, with whom he lived down to the date of his death.

The will of decedent was duly admitted to probate in this court October 16, 1914, and letters testamentary thereupon duly issued to Charles Andrest, executor therein named. By this will testator provided as follows:

"Third. I direct that whosoever it may be that may take care of me during my last days, and during my last illness, shall be fairly dealt with, and fairly paid from my estate, and that a reasonable claim for such services shall be allowed and paid from my estate."

After making provision for payment of funeral expenses from the proceeds of a life insurance policy bequeathed to Florence B. Andrest, the balance of the estate is bequeathed by said will to the children of testator, share and share alike. The estate of decedent amounts to approximately $2,000. The name of Olive Andrest, the widow, does not appear in the will.

Olive Andrest, the widow, has presented a claim against the estate for services rendered from October 1, 1913, to September 24, 1914, in taking care of said testator during his last days and during his last illness, as per last will, in the sum of $300. This claim was rejected by the executor, and has been tried before the surrogate upon the application by the executor for a judicial settlement of his account.

[1] The question presented for decision is a novel one. The claimant contends that she is embraced within the designation "whosoever it may be," and is thereby given a status and right as a creditor which she would not possess under the ordinary provisions of the law applicable in the absence of the provision in said will. The executor contends that, inasmuch as the claimant was the wife of the testator, she cannot recover for services which under well-established rules of law she was bound to render to her husband gratuitously. The rendering of the services by the claimant is not seriously disputed. The question to be determined is: Should the claimant be allowed compensation for the services rendered by her under the provision of the will hereinbefore quoted?

The basic principle underlying the execution of a will is that the testator thereby undertakes to, and does, make the law as to the disposition of his estate, provided, of course, that he possesses testamentary capacity, is free from undue influence, and observes in the execution of the will the formalities required by law. Under the laws of this state, he is met in the exercise of his testamentary disposition with but three prohibitions, viz.: (1) He cannot suspend the power of alien-

ation of real property beyond the measure of two lives in being; (2) he cannot provide for the accumulation of income beyond a minority; and (3) where he has, as the natural objects of his bounty, wife and children, he cannot dispose of more than one-half of his property and estate to charitable institutions and purposes. Avoiding these prohibitory provisions, the law assures to every testator the right to dispose of the property he has accumulated in any manner he sees fit, and it is not for the court to pass upon the wisdom or justice of the testamentary disposition made by him.

It will be noted from a study of the provisions of the will under consideration that the testator could not have intended this provision as a legacy or bounty, for no words signifying a gift or bequest are used. He did, however, intend it as a direction for the payment of a debt or obligation recognized by him to be paid, and from the language used he intended it to be a legal claim against his estate.

The contestant claims that the testator could not have intended this claimant, as she was not his wife when the will was executed. This (that she was not then his wife) is undoubtedly true. It is equally true that at the time of the execution of the will the testator could not have intended any one of his seven children therein named as against the others, for he did not then know which, if any, would render the services contemplated. He did, however, expressly direct that *whosoever* rendered such services should be paid.

I think it is well settled that a legacy or gift in a will fails if the legatee or beneficiary is not described with sufficient certainty to be identified; but identification may be made by proof outside the will of the person who answers the description or meets the requirements set forth in the will, to the end that the intention of the testator prevail. Here the testator designates the person whom he directs to be paid; hence unmistakable identity comes to the one who performs the services. The proof shows that the claimant did perform the identical services contemplated and described by the will. Consequently she is entitled to pay therefor, notwithstanding she is, or was, the wife of testator, because he set aside the rule that such services by the wife belonged to the husband. It might be said, I think, that a son or a daughter owes to a parent the duty of caring for him, and under the law cannot recover for such services, in the absence of an express contract. But who would doubt the right or power of the parent to make a valid provision or direction in his or her will that such services should be paid for out of his or her estate?

After carefully considering this provision of the will, I am of the opinion that this paragraph should be construed as creating a valid claim against the estate of the decedent in favor of *whosoever* performed the services for the reasonable value of the services performed, and that it is the duty of the executor to pay the same as a valid claim against the estate, even though the claimant was the wife of the testator and could not recover thereon in the absence of such testamentary provision. The testator could not well have employed a more comprehensive word than "whosoever."

The rights of creditors are in no way involved in this proceeding.

[2] The will was not revoked by the subsequent marriage of the testator with the claimant. Section 35 of the Decedent Estate Law provides as follows:

"If after the making of any will, disposing of the whole estate of the testator, such testator shall marry, and have issue of such marriage, born either in his lifetime or after his death, and the wife or the issue of such marriage shall be living at the death of the testator, such will shall be deemed revoked, unless provision shall have been made for such issue by some settlement, or unless such issue shall be provided for in the will, or in such way mentioned therein, as to show an intention not to make such provision; and no other evidence to rebut the presumption of such revocation, shall be received."

Not only the remarriage of a testator, but the birth of issue of such marriage, is necessary to operate as a revocation of a will. Many authorities might be cited in support of this proposition. In Matter of Lally, 136 App. Div. 781, 121 N. Y. Supp. 467, affirmed in 198 N. Y. 608, 92 N. E. 1089, it was held that a will, under the terms of which the children born of the new marriage are provided for by the testator as "such child or children of mine as may survive me," when in fact they receive greater provision under the will than they would receive, had the testator died intestate, will not be revoked by the subsequent marriage.

The only questions, therefore, remaining for determination, are: First, what is the reasonable value of the services rendered? and, second, for how long a period should such services be allowed? The testimony of the witnesses for claimant varies considerably as to the value per week, ranging from $5 to $25, while that offered by contestant attempts to fix the value at $3 per week. While claimant asks for compensation from October 1, 1913, to the date of death of testator, I would not feel justified under the proof submitted in allowing for such services prior to April 6, 1914. From that date to the time of decedent's death, a period of 25 weeks elapsed, during 3 of which it appears that testator was cared for by some of his children. Under the proof, and all the circumstances, I feel that said claimant should be allowed for the services rendered $7 per week for 22 weeks—$154.

A decree will be made accordingly.